IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 3, 2002

## CLEOPHIS KING, III v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-22969     John P. Colton, Jr., Judge**

———————————

**No. W2001-01151-CCA-R3-PC  - Filed April 29, 2003**

———————————

The petitioner appeals the denial of his petition for post-conviction relief, arguing that the post-conviction court erred in finding that his guilty pleas were knowing and voluntary and that he received the effective assistance of counsel.  Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOE G. RILEY and THOMAS T. WOODALL, JJ., joined.

Robert B. Gaia, Memphis, Tennessee, for the appellant, Cleophis King, III.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; and Thomas Hoover, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

On April 26, 1999, the petitioner, Cleophis King, III, pled guilty in the Shelby County Criminal Court to one count of especially aggravated robbery, a Class A felony; one count of especially aggravated kidnapping, a Class A felony; and two counts of aggravated robbery, Class B felonies. Pursuant to his plea agreement, he was sentenced by the trial court to fifteen years at 100% for the especially aggravated robbery conviction; fifteen years at 100% for the especially aggravated kidnapping conviction; and eight years at 30% for each of the aggravated robbery convictions, with the sentences to be served concurrently, for an effective sentence of fifteen years at 100% in the Department of Correction.  The record reflects that the petitioner 's convictions were based on his participation with a codefendant in three separate incidents: a March 25, 1998, robbery at club and gunpoint of an elderly man in his home; a March 27, 1998, robbery of a pizza delivery driver which

ended with the petitioner's throwing a beer bottle at the victim's head, resulting in serious injury to the victim; and a March 11, 1998, robbery and kidnapping at knifepoint of another pizza delivery driver. The petitioner gave detailed confessions to the crimes.

On March 29, 2000, the petitioner filed a *pro se* petition for post-conviction relief, alleging that he received ineffective assistance of counsel and that his guilty pleas were unknowing and involuntary. Post-conviction counsel was appointed, and an evidentiary hearing was held on January 11, 2001. Although the petitioner made a number of different allegations of ineffective assistance in his petition and at the evidentiary hearing, he confines himself on appeal to arguing that trial counsel was ineffective for erroneously informing him that he would be sentenced as a standard offender at 30% release eligibility, and that his guilty pleas were involuntary because he was not adequately informed of the sentencing aspects of his case.

The petitioner testified that two weeks before his scheduled trial date his mother retained trial counsel to substitute for the attorney who had originally been appointed to represent him by the trial court. He claimed trial counsel did not tell him until the day of his trial that especially aggravated robbery was an offense that had to be served at 100%, and did not review his judgment sheet with him before he signed it. He testified the 30% box had been checked in blue ink on his judgment sheet for especially aggravated robbery, but then crossed out in black ink and the 100% violent offender box checked. The petitioner said he did not check the percentage when he signed the sheet, and thus did not know which box had been checked at that time.

The petitioner acknowledged on cross-examination that his plea offer was reduced from eighteen to fifteen years on the day his case was scheduled to go to trial. He insisted trial counsel told him the eighteen-year offer was at 30%, but admitted he had known at the time he entered his guilty pleas that the fifteen-year offer was at 100%. The petitioner said he did not think he had any choice other than to accept the plea offer at the time. Trial counsel had been working on his case only two weeks, and the petitioner knew it would take longer than two weeks to prepare for the serious charges he was facing. He conceded, however, that he did not know trial counsel had not been prepared for trial. He said he thought trial counsel was incompetent, but acknowledged he failed to tell the trial court that he was dissatisfied with counsel's representation when the trial court gave him an opportunity to do so at his guilty plea hearing.

Trial counsel testified he was retained by the petitioner's mother and possibly his grandfather to substitute for the petitioner's original counsel, Steffen Schreiner. He and Schreiner discussed the posture of the case when he took over, and Schreiner provided him with copies of his file. Trial counsel identified handwriting in blue ink on the petitioner's especially aggravated kidnapping judgment sheet as his, and said he was the one who prepared the original judgment sheets. He thought it likely he had checked the 30% standard offender box and then given the judgment sheets to the prosecutor to review, who had then corrected his mistake by crossing out the standard offender box and marking the 100% violent offender box in black ink. He believed the judgment sheet had been corrected before the petitioner signed it but, regardless, was confident he had covered

everything in the judgment sheet, including the percentage of the sentence the petitioner had to serve, before the petitioner entered his guilty pleas.

Trial counsel testified on cross-examination that he had been licensed and practicing criminal law for thirty-three and one-half years. He said he had participated in thousands of criminal trials during his career, which had included a sixteen-year stint working as a part-time assistant public defender at the same time he maintained a private law practice. He testified that he knew the petitioner's trial date was only two weeks away at the time he was retained, and that he was as prepared as anyone could possibly be to try his case on that date. Trial counsel explained that, in light of the petitioner's three written confessions and the eyewitnesses the State had, "it was one of these cases where there really wasn't much of a defense." Although he had been prepared to present witnesses and argue motions to suppress the petitioner's statements at the beginning of the trial, he had not seen any real hope of suppressing the confessions[1] and was confident he had advised the petitioner of that fact.

Trial counsel testified that he and the prosecutor engaged in negotiations on the morning of the scheduled trial date, which resulted in the State's fifteen-year offer. His recollection was that the prosecutor also made one of her witnesses, the pizza delivery driver who had been seriously injured by the beer bottle, available for him to talk to that same morning and that he may have talked to other State witnesses as well. He said he was prepared to go to trial that morning to defend the case as best he could, but that the petitioner decided to accept the State's plea offer after he had outlined the State's case against him. Trial counsel described the evidence the State was prepared to present against the petitioner, and at what point the petitioner made his decision to plead guilty:

> A.      I'm sure it came up in me telling him what I probably discovered from talking to the witnesses. It didn't look good for him because here we've got a guy who was severely injured. We discussed the pros and cons of how a jury is going to view that. And also I may have told him that I may have been more concerned about the old man that they went into his house and robbed him. That that wasn't - - because there was an - - and I don't remember his name.
>
> Q.      Mr. Morris.
>
> A.      Morris, okay. He's about 73 or so years or in that neighborhood. An older gentleman. That they went in, and they put a gun - - they found a gun and put it to his - - I think Mr. King [the petitioner's codefendant] was the one who put the gun to him while

---

[1]The petitioner's original appointed attorney testified that the petitioner was given a <u>Miranda</u> warning before each of the confessions and, thus, his only avenue of attacking the confessions was based on the fact that the petitioner was seventeen years old and his father was not present for each of the statements. He appeared to concede, however, that he probably would not have been successful with that argument.

they robbed him. And I may have even talked to that gentleman. I probably thought that that wasn't a type of case that has to be tried, but I think they were consolidated. I mean it wasn't the kind of case you - - the situation is you had two pizza guys who were delivering pizzas who were called to the house and they robbed them, and then the old man's house they went into on Baltic and robbed him.

Trial counsel testified that the prosecutor made it clear that a fifteen-year sentence at 100% was the best offer she was prepared to make. He said his standard procedure was to review with clients the law regarding sentencing of violent crimes, using a sheet he carried with him which set out the maximum and minimum sentences, and he was certain he informed the petitioner that his fifteen-year sentence would have to be served at 100%. He stated that the trial court additionally informed the petitioner of the 100% aspect of his sentencing, and he was confident the petitioner understood the sentence to which he was agreeing.

Steffen Schreiner, the attorney originally appointed to represent the petitioner, testified that he turned over the petitioner's file to trial counsel and also shared with him his legal thoughts and opinions regarding the case. Schreiner said he thought it was a terrible case and had tried numerous times to negotiate a better deal from the prosecutor, to no avail. He believed the minimum fifteen-year sentence for especially aggravated kidnapping that the petitioner ultimately received was, in the context of the case, a good offer.

Rosemary Andrews, the assistant district attorney general who prosecuted the crimes, testified that she was assigned to handle the case sometime after the original charges had been filed. After reviewing the record, she concluded that the robbery of one of the pizza delivery drivers involved an especially aggravated kidnapping, and therefore caused the petitioner to be indicted on that offense as well. She said her original offer, from which she would not budge, was for eighteen years. However, on the morning of the trial, she talked to the two pizza delivery drivers, who both agreed that a fifteen-year sentence at 100% would be acceptable to them. Thereafter, she and trial counsel engaged in negotiations that went "back and forth" before ultimately settling on the fifteen-year sentence. Andrews testified the fifteen-year sentence at 100% was mentioned five or six times throughout the guilty plea, and that she detected nothing in the petitioner's demeanor or actions that indicated he did not understand the sentence.

On cross-examination, Andrews identified the handwriting in black ink on the petitioner's especially aggravated kidnapping judgment sheet as hers. She said trial counsel brought the sheet to her with the standard, 30% box checked and, in addition to correcting the mistake, she wrote across the bottom, "A felony, no parole, at 100 percent, possibility of 15 percent good-time credit if earned." She could not recall if the petitioner had already signed the paperwork at the time she made her revisions. She was certain, however, that she handed the judgment sheet back to trial counsel after correcting it and that she announced the correct sentence as part of the guilty plea.

On April 30, 2001, the post-conviction court entered an order denying the petitioner relief on his claims. Among other things, the court accredited the testimony of Andrews and trial counsel that the petitioner had been informed that his fifteen-year sentence was to be served at 100%, and concluded that he had failed to demonstrate he had been denied the effective assistance of counsel. The post-conviction court further found that the petitioner had been aware of the full ramifications of his guilty pleas, including the release eligibility date, and that his guilty pleas, therefore, had been entered knowingly and voluntarily.

## ANALYSIS

### I. Post-Conviction Standard of Review

The petitioner argues the post-conviction court erred in finding that he received the effective assistance of counsel and that his guilty pleas were knowing and voluntary. The post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns, 6 S.W.3d at 461.

### II. Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient, and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. When a petitioner's ineffective assistance claim is made in the context of a conviction stemming from a guilty plea, he must prove a reasonable probability that were it not for deficiencies in his counsel's performance, he would not have pled guilty, but instead would have insisted on going to trial. See Shazel v. State, 966 S.W.2d 414, 416 (Tenn.1998). "In cases involving a guilty plea or plea of nolo contendere, the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App.), perm. to appeal denied (Tenn. 1998).

Because both prongs of the test must be satisfied, a failure to show either deficient performance or resulting prejudice results in a failure to establish the claim. See Henley, 960 S.W.2d at 580. For this reason, courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697, 104 S. Ct. at 2069; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

The petitioner contends trial counsel provided ineffective assistance by erroneously informing him that he would be sentenced as a standard offender at 30% release eligibility, and asserts that "[e]xhibits to the evidentiary hearing and the testimony of all witnesses bears that out." On this issue, however, the post-conviction court accredited the testimony of trial counsel and Andrews that the petitioner was informed that his sentence was to be served at 100 %, and that the judgment sheet had been corrected and handed back to trial counsel to explain to the petitioner before the petitioner entered his guilty pleas. Thus, the post-conviction court concluded that the petitioner had failed to meet his burden of demonstrating he was denied the effective assistance of counsel.

The record fully supports the findings and conclusions of the post-conviction court. Although the petitioner testified trial counsel told him he was to be sentenced as a Range I, standard offender at 30% and that he did not learn differently until the day of his scheduled trial, trial counsel expressed confidence that he reviewed with the petitioner the violent acts statute, covering offenses which must be served at 100%, and that he informed the petitioner that his sentence would be fifteen years at 100%. Trial counsel thought the prosecutor corrected the petitioner's especially aggravated kidnapping judgment sheet to reflect that the sentence was at 100% before the petitioner signed it but, regardless, was certain he covered every aspect of the sentence and the plea agreement with the

petitioner before he entered his guilty pleas. Trial counsel said he was fully prepared to go to trial on the scheduled trial date, but that the petitioner made the decision to plead guilty after he had outlined the State's case against him and informed him of the offer the State made on the day of trial. Andrews testified she handed the judgment sheet back to trial counsel after correcting trial counsel's mistake and, in addition, announced the correct sentence in the guilty plea hearing, at which the petitioner was informed several times that his sentence was fifteen years at 100%. Thus, we agree with the post-conviction court that the petitioner has failed to show that trial counsel provided ineffective assistance; therefore, he is not entitled to relief on this claim.

### III. Voluntariness of Guilty Plea

The petitioner also contends that his guilty pleas were not knowing or voluntary because he "was not adequately informed of the sentencing aspects of the case." However, the record supports the post-conviction court's finding that the petitioner was informed that his fifteen-year sentence was at 100%, and that his pleas were knowing and voluntary.

When analyzing a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), and the state standard set out in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977). State v. Pettus, 986 S.W.2d 540, 542 (Tenn.1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242, 89 S. Ct. at 1711. Similarly, our Tennessee Supreme Court in Mackey required an affirmative showing of a voluntary and knowledgeable guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. Pettus, 986 S.W.2d at 542. A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904.

Since the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. Blankenship, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) his familiarity with criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

The transcript of the petitioner's guilty plea hearing reflects that in announcing the pleas the prosecutor stated that the sentences for the violent offenses of especially aggravated kidnapping and especially aggravated robbery were "fifteen years, no parole, at one hundred percent. This is a one hundred percent offense. With the possibility of fifteen percent good-time credit, if earned in this matter." After the trial court carefully informed the petitioner at great length of the rights he was

waiving by pleading guilty, and had received his repeated assurances that he understood the offenses, wished to plead guilty, and was entering his pleas freely and voluntarily, the following colloquy occurred:

Q.      Any questions about anything I've just gone over?

A.      Yes, your Honor.  About the possibility of parole, is that what you said is at fifteen percent?

Q.      No, sir.  What it says is you have - - there is no parole.

A.      Okay.

Q.      A hundred percent.

A.      Okay.

Q.      But there's a possibility that - -

A.      Right.

Q.      - - that you can earn credits up to fifteen percent, where you have to serve eighty-five percent of the sentence?

A.      Uh-huh.

Q.      Now, that's whether they, you know, it is a matter for the corrections, department of corrections to determine whether you've earned any credits or not?

A.      Okay.

Q.      You may or may not.  If not, you have to serve the whole hundred percent.  Do you understand that?

A.      Yes, your Honor.

Q.      Any questions about that?

A.       No, your Honor.

Q.      And with all that in mind, do you still want to plead guilty?

A. Yes, your Honor.

Q. Do you understand that you are pleading guilty in Indictment Number 98-11612 to especially aggravated robbery, to fifteen years in the state penitentiary at one hundred percent? Do you understand that?

A. Yes, your Honor.

Q. And you're pleading guilty in 98-11614 to aggravated robbery to eight years in the state penitentiary?

A. Yes, your Honor.

Q. And in 98-11616, you're pleading guilty to eight years to aggravated robbery in the state penitentiary?

A. Yes, your Honor.

Q. In 99-03272 you're pleading guilty to especially aggravated kidnapping to fifteen years?

A. Yes, your Honor.

Q. And all those sentences would run concurrently or at the same time. Do you understand that?

A. Yes.

Q. They would all run together.

A. Okay. Yes.

Q. Now other than that amount of time has there been any other promises made to get you to plead guilty or threats made to make you plead guilty?

A. Promises, threats, no, your Honor.

Q Are you pleading guilty then freely and voluntarily?

A. Yes, your Honor.

In addition, the petitioner told the trial court that he had no complaints about the representation provided by trial counsel and that he understood the consequences of entering his pleas, including that he would have to serve the time which had been previously outlined by the court. Thus, we agree with the post-conviction court that the record demonstrates that the petitioner entered his pleas knowingly and voluntarily after being fully informed of his rights and the sentencing aspects of his pleas.

## CONCLUSION

We conclude that the petitioner failed to meet his burden of demonstrating he was denied the effective assistance of trial counsel, or that his guilty pleas were unknowing and involuntary. Accordingly, we affirm the post-conviction court's denial of the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE